IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| V. | CAUSE NO. 3:18-CR-254-CWR-LGI |
| CHRISTOPHER CAMPBELL | DEFENDANT |

**ORDER**

Christopher Campbell has moved for compassionate release. After considering the arguments and applicable law, the motion will be denied.

In February 2019, in this cause number, Campbell pleaded guilty to a felon-in-possession charge. That May, the Court sentenced him to serve 18 months in federal prison followed by a three-year term of supervised release. The 18-month sentence was a downward variance from the calculated sentencing guidelines range.

In June 2020, Campbell filed his first emergency motion for compassionate release. Docket No. 30. He argued that he had already served most—if not all—of his sentence, and should not be left in federal custody where he, a young man with hypertension, could be needlessly exposed to COVID-19. This Court held a same-day teleconference to better understand the situation, and set an expedited briefing schedule. The following month, this Court ordered the government to produce Campbell's timesheet. The government timely complied.

In the meantime, Campbell pursued compassionate release administratively through the Bureau of Prisons, but his request was denied. It determined that while in the custody of the U.S. Marshal awaiting designation to serve his federal sentence, BOP could not perform the necessary, policy-based review and therefore could not grant compassionate release. Upon learning that Campbell had been transferred to FCI Forrest City in Arkansas, an institution which

"was not effectively controlling the spread of COVID-19," his lawyer asserted, counsel sought expedited consideration of his emergency request for compassionate release.

The record reveals a more complicated incarceration history than first anticipated.

Between September 2018 and May 2020, Campbell was serving time in state custody pursuant to a parole revocation. He appeared for these federal proceedings via writ; he was borrowed from state custody. That means his 18-month federal sentence had not yet started to run. It technically did not begin until June 2020, when Campbell was taken into custody by U.S. Marshals. Campbell's July 2020 timesheet showed that by then, about a month into his federal sentence, he had served approximately 7% of his federal sentence.

In some scenarios, the Bureau of Prisons can credit state time toward a federal sentence. The BOP, not the district court, has the statutory authority to award credit against a federal sentence for time accrued in state custody under 18 U.S.C. § 3585(b); *see United States v. Benavides-Hernandez*, 548 F. App'x 278, 279-80 (5th Cir. 2013). As this Court has explained in a somewhat-analogous case:

> To secure credit for time served in state custody, the defendant must go through the BOP's administrative process. *See* Docket No. 28-4 [BOP Program Statement No. 5160.05 (Jan. 16, 2003)]. The BOP says it will award such credit "when it is consistent with the intent of the federal sentencing court or with the goals of the criminal justice system." *Id.* at 1, ¶ 3.
>
> More specifically, the BOP's "authority to designate a state institution for concurrent service of a federal sentence is delegated to Regional Directors." *Id.* at 4, ¶ 8. Regional Directors review the general rules regarding concurrent designation and can make exceptions "based on the merits of the particular case." *Id.* Their review includes "inmate discipline history, institutional adjustment, recommendations of the Wardens at the state and federal institutions, the recommendations of the prosecuting Assistant U.S. Attorney, intent of the federal sentencing court, if available, and any other pertinent information regarding the inmate." *Id.* Then, "[i]n the event of an 'exception,' the above information will be sent to the appropriate RISA [Regional Inmate Systems Administrator] who will coordinate a response." *Id.* Ultimately, the "Regional Director is the final authority to determine exceptions." *Id.*

>This administrative process may be initiated by recommendation of the court or by inmate request. *Id.* at 5, ¶ 9.b.(3)-(4). The BOP considers an inmate's request for credit toward a federal sentence for time spent in service of a state sentence as a request for a nunc pro tunc designation. Docket No. 28-4 at 5, ¶ 9(4). Once requested, the Regional Director will review the relevant documents concerning the petitioner's sentences and request a recommendation from the federal sentencing judge, the U.S. Attorney's Office and the U.S. Probation Office, as appropriate. *Id.* at ¶ 9.b.(4)(c).

*United States v. Moore*, No. 3:17-CR-41-CWR-FKB, Docket No. 31 at 3-4 (S.D. Miss. Nov. 20, 2020) (quoting BOP Program Statement No. 5160.05 (Jan. 16, 2003)).

It is not clear if this remedy is available here. However, since the BOP's online inmate locator presently shows the same anticipated release date for Campbell as did last summer's sentencing calculation, it appears that the BOP either did not receive such a request, denied such a request, or that an award of credit is unavailable here as a matter of law. If the process is available, though, this Court recommends that the BOP credit Campbell's federal sentence with the time he spent incarcerated in state custody.[1]

That leaves Campbell's compassionate release motion. Such motions require extraordinary and compelling circumstances. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

On review, there is nothing extraordinary and compelling about this case *other than* the fact that, if credited with the time in state custody, Campbell will already have served the bulk of his 18-month federal sentence. In this situation, the better course of action is to encourage administrative credit in the normal course of business, rather than wield the compassionate release analysis in circumvention of time-served credit or traditional habeas remedies.

---

[1] *See also* Program Statement 5160.05 at 5 ("The court may, from time to time, order concurrent service of the federal sentence at some time after its imposition. This may occur when primary jurisdiction resided with the state and the court believed mistakenly that the inmate was in federal custody for service of the federal sentence on the date of imposition.").

As a result, the motion is denied.

**SO ORDERED**, this the 15th day of March, 2021.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
